[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR CONTEMPT (#119) AND PLAINTIFF'S MOTION FOR CONTEMPT (#120)
BACKGROUND:
Plaintiff brought this action seeking dissolution of marriage on or about May 24, 1999. Defendant has been unemployed since January 1999, and received his last severance pay at the end of July 1999. Plaintiff was employed during the summer of 1999 and was paid at the rate of approximately $40,000 per year.
On June 29, 1999, the parties entered a stipulation regarding their joint Fidelity Investment Account. This agreement required that prior to his using any of the Fidelity find, Defendant expend $5000 of his funds for ordinary and customary household expense. Thereafter, Plaintiff learned that Defendant had ordered checks for this account and she immediately, on or about July 28, 1999, unilaterally placed a freeze on this Fidelity Account. The account was frozen from July 28 through August 11. On July 29, 1999, Plaintiff moved for modification of the Automatic Orders, requesting permission to sell stock from the Fidelity account and to distribute one half of the proceeds to each of the parties. This motion was denied by Judge Tierney. Judge Tierney ruled as follows:
 "There is authority for Fidelity Investment Accounts to be withdrawn in the usual course of business, or for customary and usual household expenses, such as language that virtually parallels that of the automatic orders. Therefore, the parties are free to use their checking account or their other assets for the purpose of paying ordinary and reasonable expenses. CT Page 13986
Each is entitled to do so.
 One may take sixty percent, one may take 40 percent, one may take ninety-eight percent, and the other may take nothing. If those turn out to be customary and usual household expenses, then there's no violation of the automatic orders." (Transcript p. 31, Hearing August 9, 1999)
One week after Judge Tierney's order denying Plaintiffs request to divide the Fidelity account, Plaintiff sold the stock held in that account, placed the proceeds into the cash portion of the account, and drew checks as follows:
1. $2500 to the attorney for the children;
2. $32,000 to Plaintiff and
3. $32,000 to Attorney Joseph O'Conner, as trustee for Defendant.
Attorney O'Conner immediately returned the check to Plaintiff's attorney and Defendant thereafter filed the present motion for contempt.
The shares of stock sold by Plaintiff had a gross sales price of $66,352.50. They were:
 400 shares of American Power Consolidated 1000 shares of America West 500 shares of CD Now 1500 shares of Pepboys
Following Plaintiff's sale of these shares, on August 23, 1993, Defendant filed the present motion for contempt. Thereafter, Plaintiff restored some of the shares to the account as follows:
 248 shares of American Power Consolidated 553 shares of America West 382 shares of CD Now 1115 shares of Pepboys
The gross value of these replacement shares was approximately $37,000. The difference in value of stock sold and value of the replacement shares is approximately $29,000. Plaintiff provided CT Page 13987 an account for a portion of the difference as follows:
 $2500 payment to attorney for the children; and $10,000 payment to Plaintiff's attorney; and $4000 payment to Plaintiff's prior attorney; and approximately $3000 in ordinary and customary household expenses.
At the same time that Plaintiff used funds from the Fidelity joint account for household expenses, she deposited her own paycheck into her personal account. Plaintiff, without Defendant's knowledge, also deposited Defendant's last severance check into the joint account and, in part, used this money for her household expenses.
DISCUSSION
Practice Book Section 25-5 contains the Automatic Orders. These apply to both parties and are "effective with regard to the Plaintiff upon the signing of the complaint." Subparagraph (a)(1) provides as follows:
 Neither party shall sell, transfer, encumber . . . , conceal, assign, remove, nor in any way dispose of, without the consent of the other party in writing, or an order of the judicial authority, any property, individually or jointly held by the parties except in the usual course of business or for customary and usual household expenses or for reasonable attorneys fees in connection with this action[1]
Plaintiff's sale of the stock in the Fidelity account and withdrawing and using the proceeds for other than the permitted purposes violated the Automatic Orders. Her action was clearly willful as her request for court permission to divide and distribute these funds had just been denied. By freezing the account, Plaintiff cut off Defendant's access to these joint funds at a point when, having been unemployed for some eight months, he clearly needed them.
The Plaintiff replaced some of the stock after Defendant objected to the sale and distribution and filed a motion for contempt. Her actions caused a loss of family assets as follows: CT Page 13988
Net Loss
 Stock Shares Sold Shares Repurchased of Shares ______________ ______________ _____________________ __________ American Power Conversion 400 248 152 America West 1000 553 447 CD Now 500 382 118 Pepboys 1500 1115 385
The difference between the value of stock sold and the value of stock replaced was approximately $29,000. of this amount, only $19,500 was used for permitted purposes. The Court finds the Plaintiff in contempt for violation of the Automatic Orders by her sale of the stock, her division and distribution of the proceeds, and by spending a portion of this money for purposes not permitted by Practice Book § 25-5.
It is the order of the Court that Plaintiff deposit the sum of $9500 into the parties' joint Fidelity account on or before December 1, 1999. Said account shall be available only for purposes permitted by Practice Book 25-5. In addition, the Plaintiff shall pay Defendant the sum of $2200 for legal fees incurred with regard to prosecution of this motion for contempt, said payment to be made on or before November 26, 1999.
RE: VIDEOTAPE
The Court orders that, if not previously done, Defendant furnish the videotape, referred to in Motion 120, to Plaintiff within 2 days of this order.
HILLER, J.